IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PIERPOINT FARMS, INC., <br> JEFFREY W. PIERPOINT, and <br> JILL A. PIERPOINT, <br><br> Plaintiffs, <br><br> v. <br><br> DOMESTIC ENERGY PARTNERS, <br> PARTNERSHIP #1 <br><br> Defendant. | Case No. 12-4003-RDR |

### MEMORANDUM AND ORDER

The amended complaint in this case has four causes of action. The first cause of action relates to the alleged deduction of transportation costs from gas royalties and whether the gas royalties are the product of gas selling prices negotiated in arms length transactions between non-affiliated parties. The second cause of action concerns whether gas production on leased property is accurately measured. The third and fourth causes of action concern whether the proper amount of damages was paid for pipelines laid on plaintiffs' property when two pipelines were laid in the same trench. This case is before the court upon cross-motions for partial summary judgment. The motions relate to the first, third and fourth causes of action. Most of the argumentation concerns the first cause of action regarding the alleged deduction of transportation costs from gas royalties and whether defendant sold the gas to an affiliate.

I. <u>Summary judgment standards</u>

Summary judgment is proper if the moving party demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The court views the evidence in a light most favorable to the nonmoving party. <u>Spaulding v. United Transp. Union</u>, 279 F.3d 901, 904 (10th Cir. 2002). A fact issue is material if its resolution is essential to the proper disposition of a claim. <u>Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.</u>, 259 F.3d 1226, 1231-32 (10th Cir. 2001). A factual dispute is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 670 (10th Cir. 1998). "While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." <u>Piercy v. Maketa</u>, 480 F.3d 1192, 1197 (10th Cir. 2007). In other words, the court may consider evidence produced by the moving party as well as the absence of admissible evidence in favor of an essential element of the non-moving party's claim. <u>Adams v. Am. Guar. & Liab. Ins. Co.</u>, 233 F.3d 1242, 1246 (10th Cir. 2000).

II. <u>Uncontroverted facts</u>

Plaintiffs are the lessors in four oil and gas leases. The leases were originally negotiated with Mission Land Services, LLC, in 2002. Defendant Domestic Energy Partners, Partnership #1 ("DEP") acquired the lessees' interest in the oil and gas leases in 2004. The leases produce gas in Wilson County, Kansas. The gas is transported by DEP to the Southeastern Kansas Pipeline ("SEK"). The gas is sold by DEP to SEK and then it is transported by SEK through its pipeline to a bigger interstate pipeline, the Southern Star Central Gas Pipeline ("Southern Star"). SEK resells the gas to Southern Star and pays defendant DEP 80% of the resale price. Defendant DEP in turn pays plaintiff a 1/8 royalty based upon the price paid to DEP by SEK.

Paragraph #3 in the leases calls for the <u>lessee</u> to pay plaintiffs a one-eighth royalty based on the "gross proceeds" of gas produced and saved from each well. Later in the same paragraph, the leases provide that:

> No costs of leasing, drilling, equipping, producing, constructing or maintaining gas lines or transportation costs from the wellhead to and including the major pipeline, or any other charges of any kind other than applicable pro rata taxes, shall be deducted in any manner from Lessors' royalties. Only pro rata deductions for major pipeline transportation expenses incurred from the point of connection to the major pipeline to the actual market where the gas is sold are permitted. Gas selling prices must be the result of bona fide arms length

negotiations and agreements with a third party which is not a subsidiary, parent or affiliate of Lessee.

As mentioned, SEK pays defendant DEP 80% of the price received by SEK for gas from the leases. This is according to the "GAS GATHERING AND PURCHASE CONTRACT" between DEP and SEK which provides in part:

> 3. PRICE AND PAYMENT
> (a) BUYER [SEK], shall pay SELLER [DEP] for gas purchased under this Contract within 60 days of the close of each Fiscal Month for gas delivered by SELLER to BUYER during each month.
> (b) For the gas purchased under this Contract, BUYER agrees to pay for such gas delivered at the point(s) of delivery during each Fiscal Month a percentage of the weighted average of price received by BUYER upon resale of all gas of like kind and quality sold by BUYER from its Gathering System.
> . . . .
> (e) In determining the price[] received by BUYER [SEK] for gas redelivered and resold for purposes of sub-section 3(c) above, there shall be deducted from the price, on an average unit basis, all costs and charges borne by BUYER for measurement, dehydration, transport and carriage, and storage of gas at or beyond BUYER's point of delivery for resale.

Doc. No. 39-1 at pp. 3-4. The 80% figure is listed in the contract as the "percentage of the weighted average . . . price." Id.

The SEK pipeline is approximately half the circumference of the Southern Star pipeline. The SEK pipeline is 18 miles in length. The Southern Star pipeline is an interstate pipeline extending in every direction beyond the State of Kansas.

The partners of DEP are Domestic Energy, LLC, and Wheatfield Domestic Energy, LLC. They are wholly-owned subsidiaries of Domestic Energy Partners, LLC. The owners of Domestic Energy Partners, LLC include Robert L. Patton, Jr. Mr. Patton has a 10% interest in Domestic Energy Partners, LLC. He has signed annual reports submitted by SEK. The owners of SEK are: TCRG ("Texas Capital Resource Group"), Inc. (86.58%), Mike Jones (5%), and SK Investors, LLC (8.42%).[1] It is not clear for what years this information pertains.

Defendant DEP and SEK share the same address and telephone numbers in Fredonia, Kansas and the same address in Fort Worth, Texas. Local contacts for defendant DEP and SEK in Fredonia, Kansas are the same. Some filings made by SEK with the Kansas Corporation Commission and the Kansas Secretary of State are signed by persons who have a connection with defendant DEP.

Regarding the damages question raised in the third and fourth causes of action, the leases contain a provision which states:

---

[1] The partnership and ownership information contained in this paragraph is not disputed by plaintiffs, but it is not admitted either. Plaintiffs contend that it is not relevant to their construction of the transportation costs provision in the leases. This may be true. But, it is relevant to the question of whether defendant DEP and SEK are affiliates as alleged in the amended complaint. Defendant DEP raises this issue in its motion for partial summary judgment. Plaintiffs note that discovery is not complete. But, plaintiffs have not submitted an adequate declaration or affidavit under FED.R.CIV.P. 56(d) explaining why plaintiffs cannot present facts essential to its opposition. See Todd v. Montoya, 877 F.Supp.2d 1048, 1083 (D.N.M. 2012).

> Pipelines. It is hereby understood and agreed that for all pipelines which serve other leases in addition to the hereinabove leased premises, LESSEE shall pay as damages the sum of $5.00 per rod together with market value of growing crops destroyed, if any.

III. Relief requested by the cross-motions for partial summary judgment

Plaintiffs' motion for partial summary judgment asks the court to find that the lease language must be interpreted to say that: 1) plaintiffs are not required to pay the 20% that SEK charges to get the gas to the major pipeline, the Southern Star pipeline; and 2) that the lease language prohibiting deduction "in any manner" for costs of transportation, requires that when defendant DEP calculates the 1/8 royalty due to plaintiffs, DEP should not be allowed to charge plaintiffs for the 20% kept by SEK for what is essentially the costs of transporting the gas to the Southern Star pipeline. Doc. No. 45, p. 11. Plaintiffs' motion further asks the court to find that the lease language providing for a $5.00 per rod payment for "all pipelines" means that defendant DEP should pay $5.00 per rod for each pipeline serving other leases even if two pipelines are laid in the same trench. Id. at pp. 11-12. While plaintiffs ask the court to construe two provisions in the leases, plaintiffs do not ask that the court grant judgment for plaintiffs upon any of plaintiffs' causes of action.

Defendant DEP's motion for partial summary judgment asks that summary judgment be granted in DEP's favor upon plaintiffs' claims regarding the deduction of transportation costs and plaintiffs' claims regarding breach of contract for affiliate sales. Doc. No. 39, p. 11. Defendant DEP's response to plaintiffs' motion for partial summary judgment also suggests that plaintiffs' claims for damages relating to the two pipelines in the same trench should be dismissed as untimely filed.

IV. <u>Standards for contract construction</u>

The Tenth Circuit reviewed the standards for construing a contract, such as an oil and gas lease, in <u>Slawson Exploration Co. v. Vintage Petroleum, Inc.</u>, 78 F.3d 1479, 1481-82 (10th Cir. 1996):

> It is well established under Kansas law . . . that in construing a contract "the intent of the parties is the primary question." <u>Akandas, Inc. v. Klippel</u>, 250 Kan. 458, 827 P.2d 37, 44 (1992) (citation omitted). "Unless a written instrument is ambiguous or vague in its terms, that intention must be determined from the instrument as a whole or, as is often stated, from its 'four corners', which simply means that all of the language used anywhere in the instrument should be taken into consideration and construed in harmony with other provisions of the contract." <u>Texaco, Inc. v. Holsinger</u>, 336 F.2d 230, 233 (10th Cir.1964) (applying Kansas law), <u>cert. denied</u>, 379 U.S. 970, 85 S.Ct. 669, 13 L.Ed.2d 563 (1965). A contract is ambiguous only if "the application of the rules of interpretation to the face of the instrument leaves it genuinely uncertain as to which of two or more meanings is proper." <u>Id.</u> If the contact is ambiguous, "the intention of the parties is not ascertained by resort to literal

> interpretation, but by considering all language employed, the circumstances existing when the agreement was made, the object sought to be attained, and other circumstances, if any, which tend to clarify the real intention of the parties." Klippel, 827 P.2d at 51 (citation omitted); Boos v. National Fed'n of State High Sch. Ass'ns, 20 Kan.App.2d 517, 889 P.2d 797, 804 (1995) (extrinsic evidence admissible to aid interpretation of genuinely ambiguous contract provision). . . .
> If the language of a written contract is ambiguous, we may look beyond the four corners of that document to determine the intent of the parties. Klippel, 827 P.2d at 51; Boos, 889 P.2d at 804. "Whether an ambiguity exists in a written instrument is a question of law to be decided by the court." Kennedy & Mitchell, Inc. v. Anadarko Production Co., 243 Kan. 130, 754 P.2d 803, 806 (1988). However, "[o]nce it is determined that a contract is ambiguous and that its construction depends on extrinsic circumstances, interpretation of the contract becomes a question of fact." City of Farmington v. Amoco Gas Co., 777 F.2d 554, 560 (10th Cir.1985).

If it is determined that the extrinsic evidence is undisputed and conclusive, then the construction of the contract may become a question of law for the court. Id. at 1482 (citing Weiner v. Wilshire Oil Co. of Texas, 192 Kan. 490, 389 P.2d 803, 810 (1964) (Schroeder, J., concurring) ("Where, as here, extrinsic evidence is conclusive and undisputed and renders the meaning of an instrument clear, construction of such instrument becomes a question of law for the court.")).

The law in Kansas also provides that ambiguities within an oil and gas lease "'should be construed in favor of the lessor and against the lessee, since it is the lessee who usually provides the lease form or dictates the terms thereof.'"

Klippel, 827 P.2d at 44 (quoting, Rook v. James E. Russell Petroleum, Inc., 679 P.2d 158, 159 Syl.1 (Kan. 1984)).

V. Construction of the leases as regards plaintiffs' first cause of action (transportation costs and affiliate sales)

Plaintiffs contend that defendant DEP should pay the 1/8 royalty based upon the price paid for the gas when it is delivered to the "major pipeline" – which plaintiffs contend is the Southern Star pipeline – and that the transportation costs for delivering the gas to the Southern Star pipeline should not be deducted from the royalties paid. Defendant DEP contends that it sells the gas to SEK and that the gross proceeds are rightly determined from that purchase price, not the price received by SEK when SEK delivers the gas to the Southern Star pipeline.

The court believes defendant DEP's construction of the leases comports with the plain meaning of the language. Under the leases, "proceeds" are the money derived from a sale of the gas by defendant DEP. There appears to be no dispute that defendant DEP sells the gas in question to the SEK pipeline. The contract requires that defendant DEP pay plaintiffs 1/8 of the "proceeds" without any deduction for transportation expenses incurred, unless those transportation expenses are incurred from the point of connection to the major pipeline to the actual market where the gas is sold. Here, the gas was sold before it

was transported by SEK in its pipeline to what plaintiffs contend is the major pipeline (the Southern Star pipeline). No expenses for transportation up to the point of sale (to SEK) are deducted from plaintiffs' royalties. Plaintiffs argue that the contract prohibits the deduction of the costs of transporting the gas to the Southern Star pipeline "in any manner" and that defendant DEP is violating that provision of the contract. The court disagrees. The leases speak of deductions from the gross proceeds <u>received by the lessee</u> (defendant DEP) from its sale of the gas. The transportation costs to the Southern Star pipeline are incurred by SEK after the sale of gas by DEP to SEK. They are not deducted from the proceeds of the sale of gas by DEP, although the "proceeds" received by defendant DEP are calculated at 80% of the SEK's resale price.[2]

An argument remains as to whether the "[g]as selling prices" are "the result of bona fide arms length negotiations and agreements with a third party which is not a subsidiary, parent or affiliate of [DEP]." Plaintiff alleges in the amended complaint that SEK and defendant DEP are affiliates. Defendant seeks a finding upon its partial summary judgment motion that DEP and SEK are not affiliates. Each side has presented the

---

[2] Plaintiffs have submitted affidavits from persons involved in negotiating the leases which provide extrinsic evidence in support of plaintiffs' construction of the "transportation costs" paragraph. The court, however, has found that the paragraph is not ambiguous in the context of the entire contract. Therefore, the court shall not refer to those affidavits.

court with some information and argument regarding this question.

The court's review of the matter is hindered by the fact that the oil and gas leases do not define "affiliate." Defendant suggests that the court should use a definition contained in a Kansas securities statute (K.S.A. 17-12,100(a)) which provides that an "affiliate" is an entity which directly or indirectly controls or is controlled by another entity or is under common control with another entity. Defendant DEP and plaintiffs also make reference to K.S.A. 17-1297(a) which offers a similar definition of "affiliate." K.S.A. 12,100(d) further provides that "control" means "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person [or entity], whether through the ownership of voting stock, by contract or otherwise" and that control may be "presumed" if an entity owns 20% or more of a corporation's outstanding voting stock.

Assuming that the above-cited Kansas statutes are proper reference points for determining whether defendant DEP and SEK are affiliates, the court does not believe the record before the court is compatible with granting partial summary judgment upon the issue. K.S.A. 12,100(d) sets forth the possibility of control "through ownership of voting stock, by contract or otherwise." The record does not demonstrate that plaintiffs are

11

unable to prove such control. In addition, while the provisions regarding voting stock set out a percentage of ownership which creates a presumption of control, they do not preclude the possibility of control with a lesser ownership percentage or the absence of control with a greater ownership percentage. "Control" also can be established "by contract or otherwise."

To summarize, the court's reading of the oil and gas leases agrees with the construction advocated by defendant DEP as to the issue of transportation costs. But, the court finds that defendant has failed to demonstrate that no genuine issue of fact remains as to whether defendant DEP and SEK are affiliates for the purposes of the leases at issue.

VI. <u>Construction of the leases as to the third and fourth causes of action (damages)</u>

It appears undisputed, at least for the purpose of showing a live case or controversy, that defendant placed two pipelines in the same trench across plaintiffs' land and that those pipelines serve other leases in addition to plaintiffs' leases. It also appears undisputed that plaintiffs were paid damages in the sum of $5.00 per rod for the pipelines and perhaps other damages for the destruction of growing crops.

The leases provide that: "It is hereby understood and agreed that for all pipelines which serve other leases in addition to the hereinabove leased premises, LESSEE shall pay as

12

damages the sum of $5.00 per rod together with market value of growing crops destroyed, if any." The court believes that the term "all pipelines" is ambiguous. It is reasonable to construe the term as meaning each pipeline. It is also reasonable to construe the term as meaning all pipelines as a group.

Defendant DEP does not dispute that affidavits submitted by plaintiffs indicate that the parties who negotiated the leases intended the damages provision to require the payment of damages of $5.00 per rod for each pipeline, not one $5.00 per rod damage payment for multiple pipelines laid within the same area or in the same trench.[3]

Because the extrinsic evidence appears undisputed and supports plaintiffs' construction of the ambiguous terms relating to damages, the court shall grant plaintiff's request that the court find that the leases in question require a $5.00 per rod damages payment for each pipeline defendant laid on plaintiffs' property which served other leases in addition to plaintiffs' leases.

VII. Conclusion.

Summing up, plaintiffs' and defendant's motions for partial summary judgment (Doc. Nos. 36 and 38) are granted in part and

---

[3] Defendant makes a statute of limitations argument against plaintiffs' damages claims. Without addressing the merits of the argument, the court agrees with plaintiffs that defendant has not sufficiently supported its limitations argument with uncontroverted facts in the record for the court to grant summary judgment against plaintiffs' claims. Defendant may raise the argument again at a later stage in the proceedings.

13

denied in part in accordance with this memorandum and order. No causes of action are dismissed and none are granted. The court concurs with defendant's construction that transportation costs have not been deducted from defendant's "gross proceeds" prior to the calculation of plaintiffs' royalties. The court also finds that plaintiff's construction of the damages paragraph is correct as a matter of law and undisputed fact.

**IT IS SO ORDERED.**

Dated this 1st day of March, 2013 at Topeka, Kansas.

*s/Richard D. Rogers*
United States District Judge